UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JINXU CHEN, on behalf of himself and all
others similarly situated,

Plaintiff,

- against -

L & H WINE & LIQUOR, INC. d/b/a L &
H Wine and Liquor; LONGHUA LIN a/k/a
Long Hua Lin, and JIANHAO REN a/k/a
Jian Hao Ren,

Defendants.

---

**MEMORANDUM
OPINION & ORDER**

19 Civ. 6115 (PGG)

---

PAUL G. GARDEPHE, U.S.D.J.:

This is an action for, inter alia, wages and overtime pay pursuant to the Fair Labor

Standards Act (the "FLSA") and the New York Labor Law (the "NYLL").  Plaintiff Jinxu Chen

alleges that he was employed by Defendants L & H Wine & Liquor, Inc., Longhua Lin, and

Jianhao Ren as a clerk at their Bronx liquor store, and that he was not paid appropriate wages,

overtime, and spread-of-hours pay.  Chen also alleges that Defendants did not comply with wage

notice and wage statement requirements.  Plaintiff seeks back pay, spread-of-hours pay,

liquidated damages, pre-judgment interest, and an award of attorneys' fees and costs.

The Complaint was filed on June 30, 2019.  (Cmplt. (Dkt. No. 1))  In the

Complaint, Plaintiff asserts wage and overtime claims under the FLSA and NYLL, a spread-of-

hours pay claim under the NYLL, and wage notice and wage statement violations under the

NYLL.[1]  (Cmplt. (Dkt. No. 1) at ¶¶ 38-76)

---

[1]  Before trial, Plaintiff Chen withdrew his claim that Defendants had violated the NYLL's
recordkeeping requirements.  (See Cmplt. (Dkt. No. 1) Count VI; Pre-Trial Order (Dkt No. 68) at
3)

At a May 18, 2022 conference, the parties waived their right to a jury trial.  (Dkt.

No. 49)  On June 15, 2022, the parties appeared for a bench trial.  (Trial Transcript ("Trial Tr.")

(Dkt. Nos. 71, 73))

This memorandum opinion constitutes the Court's findings of fact and

conclusions of law pursuant to Fed. R. Civ. P. 52(a).

## I.    FINDINGS OF FACT

### A.    Longhua Lin and L & H Wine & Liquors, Inc.

1.    Defendant Longhua Lin owns 100 percent of L & H Wine & Liquor, Inc.

(Lin Decl. (Dkt. No. 51) ¶ 2)[2]

2.    L & H Wine & Liquor, Inc. operated a liquor store at 2557 Third Avenue,

Bronx, New York during 2018 and 2019 (the "relevant time period").  (Id.

¶ 3; Pre-Trial Order (Dkt. No. 66) at 4)[3]

3.    L & H Wine & Liquor Inc. was an enterprise engaged in commerce

covered by the FLSA during the relevant time period.  (Pre-Trial Order

(Dkt. No. 66) at 4)

4.    L & H Wine and Liquor had fewer than 11 employees and was a "small

employer" within the meaning of the NYLL.  (Id.)

---

[2]  Although this Court directed the parties to submit "affidavits constituting the direct testimony
of each trial witness" (Dkt. No. 46), Defendants Lin and Ren submitted declarations rather than
affidavits.  Lin and Ren testified, however, that they believed that the statements they made in
their declarations were made under oath.  (Trial Tr. 46, 104)  Given these circumstances, the
Court has considered Lin and Ren's declarations.
[3]  Except as to the trial transcript, all page cites are as reflected in this District's Electronic Case
Files ("ECF") system.  Cites to the trial transcript reflect the page numbers assigned by the court
reporter.

5.       L & H Wine & Liquor Inc. had $706,000.00 in gross annual revenue in 2018.  (Id.)

6.       Defendant Lin had the power to hire and fire employees of L & H Wine & Liquor Inc. during the relevant time period.  (Id.)  Defendant Lin also set the work schedules and salaries for his employees and was responsible for maintaining employee records during the relevant time period.  (Id.) Defendant Lin was also responsible for ordering inventory for the store. (Trial Tr. 21-22)

**B.**       <u>**The Hiring of Plaintiff Jinxu Chen**</u>

7.       The Court found Plaintiff Chen to be a careful and deliberate witness.  He appeared to be attempting to do his best to provide accurate testimony at trial.  Accordingly, the Court generally accepts Chen's account of his interactions with Lin.

8.       In or around December 2018, Defendant Lin arranged for a "Help Wanted" advertisement to appear on "www.chinaren.com".  (Trial Tr. 49)

9.       The advertisement did not contain any information concerning work schedule or pay, but did state that lodging would be provided.  Plaintiff Chen saw the advertisement and called Defendant Lin about the job. (Chen Aff. (Dkt. No. 53) ¶ 6)  This Court does not credit Defendant Lin's testimony regarding the advertisement, because he testified that he never saw the posted advertisement.  (Trial Tr. 51)

10.     In early December 2018, Plaintiff Chen met with Defendant Lin at the liquor store to discuss the job.  (Chen Aff. (Dkt. No. 53) ¶ 7; Lin Decl. (Dkt. No. 51) ¶ 7; Trial Tr. 6)

11.     Plaintiff Chen told Defendant Lin that he had previously worked for several months at another liquor store.  (Trial Tr. 9-10)

12.     During this meeting, Defendant Lin told Plaintiff Chen that he would work from 9:30 a.m. through 1:30 p.m., and from 5:00 p.m. through 12:00 a.m. six days a week.  (Chen Aff. (Dkt. No. 53) ¶ 16; Trial Tr. 7-8, 15-16, 55, 57)

13.     Defendant Lin told Plaintiff Chen that he would be paid $2,800 per month, with the potential for a raise to $3,000 if he performed well.  (Trial Tr. 9-11, 15, 60; Chen Aff. (Dkt. No. 53) ¶ 9)

14.     Consistent with the online advertisement Chen had seen, Defendant Lin also told Plaintiff Chen that lodging – an apartment above the liquor store – would be provided as part of his compensation.  (Trial Tr. 11, 13-15, 60; Pltf. Ex. 6 (Text messages) (Dkt. No. 67-6) at 10 (Chen asking, "is it free for me to live upstairs?" and Lin responding, "You have already been living for over two months, have I asked you for a rent?")

15.     Defendant Lin has offered inconsistent testimony about the compensation he offered Chen.  In his declaration, he states that he told Chen during their initial meeting that Chen's "total monthly compensation would be $4,200 a month." (Lin Decl. (Dkt. No. 51) at ¶ 11)  But at trial, Lin denied that he had told Chen that his monthly compensation would be

$4,200. (Trial Tr. 59)  Later in his trial testimony, Lin stated that he had told Chen that his compensation would be "$4600 a month for 11 hours a day." (Id. at 65-66)  Given the inconsistent accounts Lin has offered concerning Chen's monthly compensation, this Court accepts Chen's account that he was offered $2,800 a month plus lodging.

16.  At the initial meeting, Lin did not say anything to Chen about overtime compensation.  He instead told Chen that the $2,800 monthly salary was "all inclusive."  (Trial Tr. 15-17)  During Chen's employment at L & H Wine & Liquor, he was never informed that he would be compensated at a rate of time and a half for hours worked in excess of 40 per week.  (Chen Aff. (Dkt. No. 53) ¶¶ 39-40)

17.  After Lin and Chen's initial meeting, Lin sent a text message to Chen confirming that Chen had the job and stating what time Chen should appear for work at the store.  (Trial Tr. 8)

18.  Plaintiff Chen was not provided a written wage notice at hiring.  (Pre-Trial Order (Dkt. No. 66) at 4)

19.  Defendant Lin testified that he spoke with an accountant about Chen's compensation.  According to Lin, the accountant told Lin the amount of money to pay Chen in order to be compliant with minimum wage and overtime laws.  (Trial Tr. 58, 71-72)

**C.**  **Chen's Employment at L & H Wine & Liquor**

20.  Plaintiff Chen worked at L & H Wine & Liquor from December 4, 2018, to June 18, 2019.  (Chen Aff. (Dkt. No. 53) at ¶¶ 15-16)

21.    Between December 4, 2018, and December 15, 2018, Chen worked

Monday through Friday from 9:30 a.m. to 1:30 p.m., and from 5:00 p.m.

to 12:00 a.m.  On Sundays, Chen worked from 12:00 noon to 9:00 p.m.

(Id. at ¶ 15)

22.    Between December 16, 2018, and June 18, 2019, Chen worked Monday

through Saturday from 9:30 a.m. to 1:30 p.m., and from 5:00 p.m. to 12:00

midnight.  (Id. at ¶ 16)  Throughout his time at the liquor store, Plaintiff

Chen consistently worked approximately 66 hours per week.  (Id. at ¶¶ 15-

16)

23.    Defendant Lin testified that he maintained written time records reflecting

Plaintiff Chen's hours.  (Lin Decl. (Dkt. No. 51) ¶ 22; Trial Tr. 57)  The

Court concludes that Lin's records are not reliable and therefore cannot

serve as the basis for calculating Chen's hours.  Lin testified that he

sometimes recorded Chen's hours after the fact (Trial Tr. 82), and that he

never recorded Chen's days off.  (Id. 77)  And while Lin testified that

Chen stopped working on Sundays after December 16, 2018, Lin's written

notes contradict this assertion.  (Id. 77; Pltf. Ex. 2 (Dkt. No. 67-2))

24.    Plaintiff Chen's job responsibilities were to sell liquor, sort liquor, and

move merchandise to and from the basement.  (Trial Tr. 19)

25.    During his employment, Chen was paid on the third day of each month.

(Trial Tr. 84)

26.     After his first month of employment, Plaintiff Chen requested an increase in salary, from $2,800 per month to $3,000 per month.  Defendant Lin agreed to the raise.  (Trial Tr. 84)

27.     Defendant Lin recorded on a calendar page each of the salary payments he made to Plaintiff Chen.  (Pltf. Ex. 2 (Dkt. No. 67-2); Trial Tr. 84)  Lin's records reflect the following payments to Chen:

   a.     $2,800 on January 3, 2019;

   b.     $3,000 on February 3, 2019;

   c.     $3,000 on March 3, 2019;

   d.     $3,000 on April 3, 2019;

   e.     $3,000 on May 3, 2019;

   f.     $3,000 on June 3, 2019.  (Pltf. Ex. 2 (Dkt. No. 67-2))

28.     There is no evidence that Lin ever agreed to, or did in fact, pay Chen time and a half for hours worked in excess of 40 per week.

29.     Lin did not provide wage statements to Chen in connection with the salary payments he made to Chen.  (Chen Aff. (Dkt. No. 53) at ¶ 43)

30.     On May 18, 2019, Chen asked Lin to increase his salary from $3,000 per month to $3,800 per month.  (Trial Tr. 88-90; Pltf. Ex. 3 (Dkt. No. 67-3) at 16)  Lin told Chen that he could not afford such a large increase, and that Chen was free to quit at any time.  (Trial Tr. 88-90)

31.     Lin later promised Chen that on June 4, 2019, he would raise Chen's salary to $3,100 per month.  (Chen Aff. (Dkt. No. 53) at ¶ 28)

32.   In a June 18, 2019, text message to Lin, Chen asked for a raise to $3,800 per month and for a W-2.  (Pltf. Ex. 6 (Dkt. No. 67-6) at 9)

33.   Later that day, Lin fired Chen.  (Trial Tr. 27)

34.   Lin did not pay Chen for the hours that Chen worked between June 4, 2019 and June 18, 2019.  (Trial Tr. 91)

**D.   <u>Ren's Employment at L & H Wine & Liquor</u>**

35.   Defendant Ren began working at the liquor store in about February 2019.  (Ren Decl. (Dkt. No. 52) at ¶ 2)  Because Lin had to return to China for a period of time between January and February 2019, Lin hired Ren to assist Plaintiff Chen in operating the liquor store.  (Trial Tr. 72-73)

36.   Defendant Ren worked Monday to Saturday from 1:30 p.m. to 12:00 midnight.  (Ren Decl. (Dkt. No. 52) at ¶ 3)

37.   Defendant Ren had no prior experience working in liquor stores.  (Trial Tr. 73)

38.   Defendant Ren's work responsibilities were to unload wine and liquor deliveries, stock shelves, wait on customers, and turn on the store alarm at the end of the work day.  (Ren Decl. (Dkt. No. 52) at ¶ 4; Trial Tr. 20)  Ren also delivered the store's cash receipts to Defendant Lin's house.  (Trial Tr. 104)  On one occasion, Ren – at Lin's direction – paid Chen his monthly salary.  (Trial Tr. 112)

39.   Plaintiff Chen and Defendant Ren both referred to Defendant Lin as "boss."  (<u>See</u> Trial Tr. 19, 104)

40.     Defendant Ren did not have any decision-making authority with respect to

Plaintiff Chen's employment.  He was not responsible for determining

Chen's compensation; he did not maintain any employment records; and

he was not authorized to make any operational decisions.  (Ren Decl.

(Dkt. No. 52) at ¶¶ 7; 8-11)

## II.     CONCLUSIONS OF LAW

### A.     Claims Tried

Chen pursued the following claims at trial:  (1) violation of the minimum wage

provisions of the FLSA (Count I); (2) violation of the minimum wage provisions of the NYLL

(Count II) (3) violation of the overtime provisions of the FLSA (Count III); (4) violation of the

overtime provisions of the NYLL (Count IV); (5) violation of the spread of hours provisions of

the NYLL and New York Department of Labor regulations (Count V); (6) violation of the wage

notice provision of the NYLL (Count VII); and (7) violation of the wage statement provision of

the NYLL (Count VIII).  (See Cmplt. (Dkt. No. 1))

### B.     Fair Labor Standards Act Claims

The FLSA embodies "'a uniform national policy of guaranteeing compensation

for all work or employment engaged in by employees covered by the Act.'"  Moon v. Kwon, 248

F. Supp. 2d 201, 227 (S.D.N.Y.2002) (quoting Tenn. Coal, Iron & R.R. Co. v. Muscoda Local

No. 123, 321 U.S. 590, 602 (1944); Reich v. New York City Transit Auth., 45 F.3d 646, 648 (2d

Cir. 1995)).  To that end, the FLSA specifies that an employer must pay covered employees "a

minimum hourly wage" of $7.25, see 29 U.S.C. 206(a)(1)(C), and must pay those who work in

excess of forty hours during a workweek "at a rate not less than one and one-half times the

regular rate at which he is employed" for those excess hours. 29 U.S.C. § 207(a)(1); see also

Moon, 248 F. Supp. 2d at 227 (the "FLSA also requires employers to pay such employees at a premium rate 'not less than one and one-half times the regular rate at which he is employed' for any hours worked in excess of forty per week." (quoting 29 U.S.C. § 207(a)(1) and citing Tran v. Alphonse Hotel Corp., 281 F.3d 23, 31 (2d Cir.2002))).  Employers who violate these provisions are liable to the employees affected in the amount of their unpaid minimum wages and their unpaid overtime compensation.  Such employers are also liable for an additional equal amount in liquidated damages.  29 U.S.C. § 216(b).

### 1.  Plaintiff's Claims Against Defendant Ren

"Employer" and "employee" are defined broadly under the FLSA.  29 U.S.C. § 203(d) defines an "employer" to include "any person acting directly or indirectly in the interest of an employer in relation to an employee," while an "employee" is defined as any individual employed by an employer.  29 U.S.C. § 203(d), (e)(1).

"[T]he [Supreme] Court has instructed that the determination of whether an employer-employee relationship exists for purposes of the FLSA should be grounded in economic reality rather than technical concepts." Irizarry v. Catsimatidis, 722 F.3d 99, 104 (2d Cir. 2013) (internal quotation marks and citation omitted).  "[T]he Second Circuit has made clear 'that the various factors [it has] relied upon . . . [i] to examine the degree of formal control exercised over a worker, [ii] to distinguish between independent contractors and employees; and [iii] to assess whether an entity that lacked formal control nevertheless exercised functional control over a worker, state no rigid rule for the identification of an FLSA employer.'" Flores v. 201 W. 103 Corp., 256 F. Supp. 3d 433, 439 (S.D.N.Y. 2017) (citations omitted).  "Rather, 'economic realities are assessed by reference to 'the particular situation[,]' with some factors more important than others depending on the FLSA question at issue and the context in which it

arises.'" Id. (quoting Brown v. New York City Dep't of Educ., 755 F.3d 154, 167 (2d Cir. 2014)).

The Second Circuit has articulated an "economic reality" test to determine whether "the alleged employer possessed the power to control the workers in question." Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 139 (2d Cir. 1999). "[T]he relevant factors include 'whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.'" Id. (quoting Carter v. Dutchess Community College, 735 F.2d 8, 12 (2d Cir. 1984)).

Defendant Lin's status as an "employer" within the meaning of the FLSA is undisputed. Defendant Lin has stipulated that he "had the power to hire and fire employees of L & H Wine and Liquor Inc[.] during the period relevant to this lawsuit," and that he "determined employees' work schedules and salaries, and was responsible for keeping employee records during the period relevant to this lawsuit." (Pre-Trial Order (Dkt. No. 68) at 4)

The Court concludes, however, that Defendant Ren was not an "employer." As discussed above, this Court finds that Defendant Ren did not exercise any decision-making authority as to Plaintiff Chen's employment, did not supervise Chen or control his work schedule, did not determine his compensation, and did not maintain his employment records. (Findings of Fact ¶¶ 35-40) Ren and Chen's duties at the liquor store were essentially the same, and both men referred to Lin as the "boss." (Id. ¶¶ 24, 38, 39) Accordingly, Chen's FLSA and NYLL claims against Ren fail, and judgment will be entered in Defendant Ren's favor as to all of Plaintiff's claims.

2.     __Minimum Wage and Overtime Violations__

An employer and employee cannot agree to waive the minimum wage and

overtime requirements of the FLSA.  See Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 707

(1945).  A mistaken belief or misunderstanding of the law is likewise not a valid defense to an

FLSA claim.  See Reich v. S. New England Telecommunications Corp., 121 F.3d 58, 71 (2d Cir.

1997) ("'Good faith' in [the FLSA liquidated damages] context requires more than ignorance of

the prevailing law or uncertainty about its development.").

An employee's regular rate of pay is "the hourly rate actually paid the employee

for the normal, non-overtime workweek for which he is employed."  Walling v. Youngerman-

Reynolds Hardwood Co., 325 U.S. 419, 424 (1945).  Under the FLSA, the regular rate of pay is

typically determined by "dividing the employee's weekly compensation by the number of hours

for which that compensation is intended."  Doo Nam Yang v. ACBL Corp., 427 F. Supp. 2d 327,

338 (S.D.N.Y. 2005) (quoting Moon, 248 F. Supp. 2d at 230).

Plaintiff bears the burden of proving that he or she performed work for which they

were not compensated.  See Grochowski v. Phoenix Const., 318 F.3d 80, 87 (2d Cir. 2003).

However, "it is the employer's responsibility to maintain accurate records of an employee's

hours."  Padilla v. Manlapaz, 643 F. Supp. 2d 302, 307 (E.D.N.Y. 2009).  Where – as here – an

employer has not maintained accurate records of an employee's wages and hours, the plaintiff

employee need only offer evidence permitting a reasonable inference as to the amount of wages

and the number of hours worked.  See Reich v. S. New Eng. Telecomm. Corp., 121 F.3d 58, 69

(2d Cir. 1997).  "When an employer fails to maintain accurate and complete records of the hours

employees work and the amounts they are paid, the plaintiff-employee need only to submit

'sufficient evidence from which violations of the [FLSA] and the amount of an award may be

reasonably inferred.'"  Gonzalez v. Masters Health Food Serv. Inc., 14 Civ. 07603 (VEC), 2017

WL 3835960, at *16 (S.D.N.Y. July 27, 2017) (quoting Reich, 121 F.3d at 66)  In such

circumstances, a court "'may then award damages to the employee, even though the result may

be only approximate.'"  Id. (quoting Reich, 121 F.3d at 66).[4]

As discussed in the Findings of Fact, Defendant Lin did not maintain accurate and

complete records of the hours that Plaintiff Chen worked.  (Findings of Fact ¶ 23)  But Plaintiff's

testimony establishes that he was paid more than the federal minimum wage while working at L

& H Wine & Liquor.  (See id. ¶¶ 15, 22, 26)  Federal minimum wage law dictates that an

employee must be paid at least $7.25 per hour for forty hours of work.  See 29 U.S.C.

206(a)(1)(C).  Under the FLSA's regular rate of pay calculation, Plaintiff Chen – when

compensated at a rate of $3,000 per month – was earning $10.49 per hour.[5]

As discussed above, the FLSA mandates that an employer must pay an employee

who has worked more than forty hours during a workweek "at a rate not less than one and one-

half times the regular rate at which he is employed" for those excess hours.  29 U.S.C. §

207(a)(1)

While Defendant Lin argues that "[h]e . . . explained [to Chen] that [his monthly]

compensation would include overtime pay" (Def. Post-Trial Br. (Dkt. No. 70) at 8), this Court

---

[4]  This same principle applies to claims brought under the NYLL.  Id. (citing Canelas v. World
Pizza Inc., 14 Civ. 7748 (ER), 2017 WL 1233998, at *9 (S.D.N.Y. Mar. 31, 2017)).
[5]  This figure reflects the following calculations:  multiplying $3,000 by 12 to ascertain the
annual salary ($36,000); dividing the annual salary figure by 52 for a weekly pay amount
($692.31); and then dividing the weekly pay amount number by 66 – the number of hours Chen
worked a week – resulting in a regular rate of pay figure of $10.49.

For the first month of his employment, Chen was paid a monthly salary of $2,800.  (Findings of
Fact ¶¶ 15, 26-27)  Chen's rate of pay for this month was $9.79 per hour, which likewise exceeds
the minimum wage under Federal law. The relevant calculations are as follows:  (1) $2,800 x 12
= $33,600; (2) $33,600 ÷ 52 = $646.15 per week; and (3) $646.15 ÷ 66 = $9.79.

finds that Lin did not discuss overtime compensation with Chen.  (Findings of Fact ¶ 16)  In any event, an employer and employee cannot agree to waive the overtime requirements of the FLSA. See Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697 (1945).  Finally, the evidence demonstrates that Chen routinely worked more than 40 hours per week, and that Lin did not pay Chen time and a half for the hours he worked in excess of 40 per week.

Based on the evidence presented at trial and the findings of fact set forth above, this Court concludes that (1) Plaintiff Chen's FLSA minimum wage claim fails; but that (2) Chen has demonstrated that Defendant L& H Wine & Liquor and Defendant Lin are liable on Chen's FLSA overtime claim.

### C.   New York Labor Law Claims

#### 1.   Minimum Wage and Overtime

The New York Labor Law is the state analogue to the FLSA.  The NYLL "does not require a plaintiff to show either a nexus with interstate commerce or that the employer has any minimum amount of annual sales," but it otherwise mirrors the FLSA as to the obligation to pay overtime compensation.  Chun Jie Yin v. Kim, 07 Civ. 1236 (DLI) (JO), 2008 WL 906736, at *4 (E.D.N.Y. Apr. 1, 2008); N.Y. Labor Law § 198; 12 N.Y.C.R.R. § 142-2.2 (an employer shall pay an employee for overtime at a wage rate of one and one-half the employee's regular rate "in the manner and methods provided in . . . the Fair Labor Standards Act").

The NYLL also obligates an employer to pay a minimum wage, but the rate of that minimum wage differs from the FLSA minimum wage.  Moreover, the NYLL minimum wage changed during the relevant time period.  Between December 4, 2018 – when Plaintiff Chen began working at L&H Wine & Liquor – and December 30, 2018, the New York minimum wage was $12.00 per hour for businesses with ten or fewer employees.  N.Y. Lab. Law § 652.

Between December 31, 2018 and June 18, 2019, the New York minimum wage was $13.50 per hour for businesses with ten or fewer employees.  Id.

To calculate an employee's regular rate of pay "[u]nder the NYLL, the Court divides the pay the plaintiff in question actually received by the lesser of 40 hours or the actual number of hours he worked during the work week." Hernandez v. Jrpac Inc., 14 Civ. 4176 (PAE), 2016 WL 3248493, at *31 (S.D.N.Y. June 9, 2016) (citing 12 N.Y.C.R.R. § 146-3.5). "There is a rebuttable presumption that an employee's fixed weekly salary covers 40 hours worked." Id. (citing Giles v. City of New York, 41 F. Supp. 2d 308, 316-17 (S.D.N.Y. 1999)).

Here, for nearly all of his employment, Plaintiff Chen was paid $692.31 per week. Dividing that number by 40 results in a rate of pay of $17.31 per hour, which is higher than the New York minimum wage.  The same is true for the month in which Chen was paid $2,800.[6] Accordingly, Plaintiff Chen's NYLL minimum wage claim fails.

For the same reasons discussed above in connection with Chen's FLSA overtime claim, however, Chen has demonstrated that Defendant L & H Wine & Liquor and Defendant Lin are liable on Chen's NYLL overtime claim.

**D.      NYLL Spread-of-Hours Pay Claim**

Under the NYLL, employees "are entitled to an additional hour's pay at the basic minimum hourly wage rate for any day in which 'the spread of hours' – defined as 'the interval between the beginning and end of an employee's workday,'. . . exceeds 10 hours." Doo Nam Yang, 427 F. Supp. 2d at 339 (citations omitted).  "The measure of the workday . . . is the number of hours from the time the employee starts his work until he finishes, including both

---

[6]  The relevant calculations are as follows:  (1) $2,800 x 12 = $33,600; (2) $33,600 ÷ 52 = $646.15 per week; and (3) $646.15 ÷ 40 = $16.15.

work time and non-working time." Galeana v. Lemongrass on Broadway Corp., 120 F. Supp. 3d

306, 319 (S.D.N.Y. 2014) (citing N.Y.C.R.R. tit. 12 §§ 142-2.4, 146-1.6). An employee is

entitled to "spread of hours" pay in addition to any claim for minimum wage or overtime. Id.;

Yu G. Ke v. Saigon Grill, Inc., 595 F. Supp. 2d 240, 260 (S.D.N.Y. 2008). "[R]ecent case law

has been nearly unanimous[, however,] that the spread-of-hours requirement extends only to

workers paid at the minimum wage level." Pinovi v. FDD Enterprises, Inc., 13 Civ. 2800 (GBD)

(KNF), 2015 WL 4126872, at *5 (S.D.N.Y. July 8, 2015) (quoting Williams v. Tri-State

Biodiesel, L.L.C., 13 Civ. 5041 (GWG), 2015 WL 305362, at *16 (S.D.N.Y. Jan. 23, 2015)

(citing cases)).

   Throughout his tenure at L & H Wine & Liquor, Chen worked approximately

eleven hours per day, six days per week. (See Findings of Fact ¶¶ 21-22) As discussed above,

however, Chen's regular rate of pay exceeded the New York statutory minimum wage.

Accordingly, Chen's NYLL spread-of-hours claim fails.

  **E.**  **NYLL Wage Notice and Wage Statement Claims**

   The NYLL requires every employer to provide employees – at the time of hiring –

with, inter alia, a notice containing . . . the rate or rates of pay and basis thereof; . . . allowances,

if any, claimed as part of the minimum wage . . . ; [and] the regular pay day designated by the

employer." Employers must also "obtain from the employee a signed and dated written

acknowledgement . . . of receipt of [the wage] notice," and "preserve and maintain" the wage

notice for six years. N.Y. Lab. Law § 195(1).

   Under the NYLL, employers are also required to "furnish each employee with a

statement with every payment of wages, listing . . . the dates of work covered by that payment of

wages; . . . rate or rates of pay and basis thereof. . . ; [and] gross wages; deductions; [and]

allowances." The wage statement must also include "the regular hourly rate or rates of pay; the

overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked." N.Y. Lab. Law § 195(3).

As discussed in the Findings of Fact, Defendant Lin never provided Chen with the wage notice required under the NYLL § 195(1) (Findings of Fact ¶ 18), or with the wage statements required under the NYLL § 195(3). (Id. ¶ 29) Accordingly, Plaintiff Chen has prevailed on his wage notice and wage statement claims against Defendant L & H Wine & Liquor and Defendant Lin.

F.    **Damages**[7]

1.    **Unpaid Wages and Overtime**

"Plaintiffs . . . may not receive a 'double recovery' of back wages under both the FLSA and NYLL." Hernandez, 2016 WL 3248493, at *31 (quoting Gen. Tel. Co. of the Nw. v. EEOC, 446 U.S. 318, 333 (1980)). Here, Plaintiff's damage award under the NYLL will "necessarily . . . subsume [any] award under the FLSA," due to the difference in "rate of pay" calculation. Id. Accordingly, the Court will only discuss damages under the NYLL.

The Court begins the calculation by determining Plaintiff's "regular rate" of pay. "Under the NYLL, the Court divides the pay the plaintiff in question actually received by the lesser of 40 hours or the actual number of hours he worked during the work week." Id. (citing 12 N.Y.C.R.R. § 146-3.5). "There is a rebuttable presumption that an employee's fixed weekly salary covers 40 hours worked." Id. (citing Giles v. City of New York, 41 F. Supp. 2d 308, 316-17 (S.D.N.Y. 1999). Because Plaintiff Chen was paid a fixed salary, his regular pay should be calculated by dividing his weekly salary by 40 hours. Id.

---

[7] A spreadsheet reflecting the Court's calculations is appended to this order.

Under the NYLL, the calculated regular rate of pay for Plaintiff for the period between December 4, 2018 and January 3, 2019 is $16.15 per hour.  The calculated regular rate of pay for Plaintiff for the period between January 4, 2019 and June 3, 2019 is $17.31 per hour. And the calculated regular rate of pay for Plaintiff for the period between June 4, 2019 and June 18, 2019 is $17.88 per hour.

The overtime rate is computed by using a multiplier of one and half times the regular rate of pay.  See 12 N.Y.C.R.R. § 146-1.4.  The overtime rate of pay for Plaintiff for the period between December 4, 2018 and January 3, 2019 is $24.23 per hour.  The overtime rate of pay for Plaintiff for the period between January 4, 2019 and June 3, 2019 is $25.97 per hour. And the overtime rate of pay for Plaintiff for the period between June 4, 2019 and June 18, 2019 is $26.83 per hour.

The Court must next calculate the weekly pay that Plaintiff should have received under the NYLL.  The lawful weekly pay is calculated as follows:  (40 hours x [regular rate of pay]) + ([Hours worked per week] – 40 hours) x [overtime rate of pay]).[8]  The lawful weekly pay figure is then multiplied by 52 weeks, with the sum then divided by 12 in order to determine the lawful monthly salary.[9]  The Court then subtracts the amount Plaintiff was actually paid per month from the lawful monthly pay figure.[10]  The resulting figure constitutes the overtime wages per month Plaintiff is owed.

---

[8]  For example, Plaintiff worked 66 hours per week for the duration of his employment. Plaintiff's lawful weekly wage for most of 2019 is:  (40 x $17.31) + ([66-40] x $25.97) = $1,367.62.

[9]  Using the weekly pay figures set forth above, the calculations are as follows:  ($1,367.62 x 52) ÷ 12 = $5,926.35.

[10]  For example, when Plaintiff Chen was paid $3,000 per month, his lawful monthly salary was $5,926.35.  Accordingly, Chen is entitled to overtime wages of $2,926.35 per month for the period of time during which he was paid $3,000 per month.

The Court has repeated this analysis for each time period for which Plaintiff received a different monthly salary. And because Defendant Lin did not pay Plaintiff Chen for the days that he worked between June 4, 2019 and June 18, 2019, Plaintiff Chen is awarded both straight time and overtime pay for that period of time.

The Court concludes that Plaintiff Chen is entitled to an award of $20,422.02 in unpaid wages and overtime compensation as against Defendant L & H Wine & Liquor and Defendant Lin.

### 2.   <u>Liquidated Damages</u>

Employers who violate the FLSA's minimum wage or overtime provisions "shall be liable" not only in the amount of their unpaid wages and overtime, but also "in an additional equal amount as liquidated damages." An employer can avoid such liability, however, by offering "plain and substantial evidence" that the employer acted in good faith and had reasonable grounds for believing that his, her, or its actions did not violation the FLSA. <u>See</u> 29 U.S.C. § 260. "To establish the requisite subjective 'good faith,' an employer must show that it took active steps to ascertain the dictates of the FLSA and then act[ed] to comply with them." <u>Gonzalez</u>, 2017 WL 3835960, at *18 (internal quotation marks and citations omitted).

Under the NYLL, an employer is liable for liquidated damages absent evidence that "the employer . . . [had] a good faith basis to believe that its underpayment of wages was in compliance with the law." N.Y. Lab. Law §§ 198(1-a), 663(1). "[C]ourts have not substantively distinguished the federal standard from the [NYLL] standard of good faith." <u>Inclan v. N.Y. Hosp. Grp., Inc.</u>, 95 F. Supp. 3d 490, 505 (S.D.N.Y. 2015).

Here, Defendant Lin testified that he consulted with an accountant about the wages that he would pay to Chen. (Trial Tr. 58, 71-72) According to Lin, based on those

discussions, he decided to pay Chen at a rate of $13.50 per hour for 40 hours, and to pay him at a

rate of $13.50 x 1.5 ($20.25) for hours in excess of 40 hours per week.  (Id.)  This would yield a

monthly salary of $4,621.50,[11] however, and it is undisputed that Lin paid Chen $3,000 per

month for nearly all the months that he worked at the liquor store.  To the extent that Lin

provided Chen with an apartment in which to live, there is no reliable testimony as to what a

reasonable rent for that apartment would have been, nor is there any evidence that Lin ever

explained to Chen that he was deducting from Chen's monthly salary an amount attributable to

rent for the apartment.  There is likewise no evidence that Lin ever discussed overtime wages

with Chen at any point.  Given these circumstances, the Court concludes that Defendant L & H

Wine & Liquor and Defendant Lin have no good faith defense.  Accordingly, these Defendants

are liable for liquidated damages in an amount equal to the amount awarded for unpaid overtime

compensation, and the amount awarded for unpaid wages for work performed during the period

between June 4, 2019 and June 18, 2019.

    Since passage of the Wage Theft Prevention Act, which became effective in 2011,

plaintiffs may recover 100 percent of total unpaid wages as liquidated damages.  Gonzalez, 2017

WL 3835960, at *18.  "'Stacked' or overlapping liquidated damages awards under [both the

FLSA and the NYLL] are generally not available for the same injury or violation," however.

Gonzalez, 2017 WL 3835960, at *19 (citing Chowdhury v. Hamza Express Food Corp., 666

Fed.Appx. 59, 60-61 (2d Cir. 2016)).  Accordingly, the larger liquidated damage award under the

NYLL – consisting of 100 percent of the unpaid wages and overtime compensation calculated

above – provides the measure of the liquidated damages award.

---

[11]  The Court arrived at this number through the following calculation:  (1) (40 x $13.50) + ([66-40] x $20.25) = $1,066.50 weekly pay; (2) $1,066.50 x 52 = $55,458 annual pay; and (3) $55,458 ÷ 12 = $4,621.50 monthly pay.

3.     **Statutory Damages for Wage Notice and Wage Statement Violations**

For wage notice violations under the NYLL, the available damages are $50 per workday, capped at $5,000.  For wage statement violations under the NYLL, the available damages are $250 per workday, capped at $5,000.  Garcia v. Saigon Mkt. LLC, 15 Civ. 9433 (VSB), 2019 WL 4640260, at *4 (S.D.N.Y. Sept. 24, 2019) (citations omitted).

Here, Plaintiff Chen worked at L & H Wine & Liquor for 169 days.  $50 x 169 equals $8,450.  $250 x 169 equals $42,250.  Accordingly, the Court finds that Plaintiff Chen is entitled to recover $5,000 in damages from Defendant L & H Wine & Liquor and Defendant Lin for their violation of the NYLL's wage notice provision, and $5,000 in damages from these same Defendants for their violation of the NYLL's wage statement provision.

**G.     Pre-judgment Interest**

Plaintiff is entitled to pre-judgment interest for violations of the NYLL. Gonzalez, 2017 WL 3835960, at *19 (citing N.Y. C.P.L.R. § 5001(a); N.Y. Lab. Law § 663(1); Reilly v. NatWest Mkts. Grp. Inc., 181 F.3d 253, 265 (2d Cir. 1999)).  By **May 9, 2024**, Plaintiff will submit a proposed calculation regarding an award of pre-judgment interest.  Any response by Defendant L & H Wine & Liquor and Defendant Lin is to be filed by **May 16, 2024**.

**H.     Attorneys' Fees and Costs**

Under both the FLSA and the NYLL, prevailing plaintiffs are entitled to an award of reasonable attorneys' fees and costs.  See 29 U.S.C. § 216(b); N.Y. Lab. Law § 663(1).  Any application for an award of attorneys' fees and costs is to be submitted by **May 9, 2024**.  Any response by Defendant L & H Wine & Liquor and Defendant Lin is to be filed by **May 16, 2024**.

## **CONCLUSION**

For the reasons stated above, the Court finds in favor of (1) Defendant Ren on all of Plaintiff's claims; and (2) Plaintiff Chen on his claims against L & H Wine & Liquor and Defendant Lin for unpaid wages and overtime compensation under the FLSA and the NYLL, and for wage notice and wage statement violations under the NYLL. Plaintiff Chen is awarded damages of (1) $20,422.02 on his claims for unpaid wages and overtime compensation; (2) $20,422.02 in liquidated damages for his claims for unpaid wages and overtime compensation; (3) $5,000 on his NYLL claim for wage notice violations; and (4) $5,000 on his NYLL claim for wage statement violations. Chen's total damage award is thus $50,844.04.

Plaintiff Chen and Defendants L & H Wine & Liquor and Lin will address pre-judgment interest and an award of attorneys' fees and costs on the schedule set forth above.

Dated: New York, New York
       May 2, 2024

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge

| Cause of Action | Pay Period From | Pay Period To | Regular Rate of Pay | Overtime Rate of Pay | Lawful Weekly Pay | Lawful Monthly Pay | Credited Weekly Pay | Credited Monthly Pay | Under-payment Per Month | Unpaid Wages and OT | Liquidated Damages | Wage Notice | Wage Statement | Totals |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| NYLL | | | | | | | | | | | | | | |
| | 12/4/2018 | 1/3/2019 | $ 16.15 | $ 24.23 | $ 1,275.98 | $ 5,529.25 | $ 646.15 | $ 2,800.00 | $ 2,729.25 | $ 2,729.25 | | | | |
| | 1/4/2019 | 2/3/2019 | $ 17.31 | $ 25.97 | $ 1,367.62 | $ 5,926.35 | $ 692.31 | $ 3,000.00 | $ 2,926.35 | $ 2,926.35 | | | | |
| | 2/4/2019 | 3/3/2019 | $ 17.31 | $ 25.97 | $ 1,367.62 | $ 5,926.35 | $ 692.31 | $ 3,000.00 | $ 2,926.35 | $ 2,926.35 | | | | |
| | 3/4/2019 | 4/3/2019 | $ 17.31 | $ 25.97 | $ 1,367.62 | $ 5,926.35 | $ 692.31 | $ 3,000.00 | $ 2,926.35 | $ 2,926.35 | | | | |
| | 4/4/2019 | 5/3/2019 | $ 17.31 | $ 25.97 | $ 1,367.62 | $ 5,926.35 | $ 692.31 | $ 3,000.00 | $ 2,926.35 | $ 2,926.35 | | | | |
| | 5/4/2019 | 6/3/2019 | $ 17.31 | $ 25.97 | $ 1,367.62 | $ 5,926.35 | $ 692.31 | $ 3,000.00 | $ 2,926.35 | $ 2,926.35 | | | | |
| | 6/4/2019 | 6/18/2019 | $ 17.88 | $ 26.83 | $ 1,412.78 | $ 6,122.05 | $    - | $    - | N/A | $ 3,061.02 | | | | |
| | | | | | | | | | | $ 20,422.02 | $ 20,422.02 | $ 5,000.00 | $ 5,000.00 | $ 50,844.04 |

| FLSA | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 12/4/2018 | 1/3/2019 | $ 9.79 | $ 14.69 | $ 773.54 | $ 3,352.01 | $ 646.15 | $ 2,800.00 | $ 552.01 | $ 552.01 | | | | |
| | 1/4/2019 | 2/3/2019 | $ 10.49 | $ 15.73 | $ 828.58 | $ 3,590.51 | $ 692.31 | $ 3,000.00 | $ 590.51 | $ 590.51 | | | | |
| | 2/4/2019 | 3/3/2019 | $ 10.49 | $ 15.73 | $ 828.58 | $ 3,590.51 | $ 692.31 | $ 3,000.00 | $ 590.51 | $ 590.51 | | | | |
| | 3/4/2019 | 4/3/2019 | $ 10.49 | $ 15.73 | $ 828.58 | $ 3,590.51 | $ 692.31 | $ 3,000.00 | $ 590.51 | $ 590.51 | | | | |
| | 4/4/2019 | 5/3/2019 | $ 10.49 | $ 15.73 | $ 828.58 | $ 3,590.51 | $ 692.31 | $ 3,000.00 | $ 590.51 | $ 590.51 | | | | |
| | 5/4/2019 | 6/3/2019 | $ 10.49 | $ 15.73 | $ 828.58 | $ 3,590.51 | $ 692.31 | $ 3,000.00 | $ 590.51 | $ 590.51 | | | | |
| | 6/4/2019 | 6/18/2019 | $ 10.84 | $ 16.26 | $ 856.36 | $ 3,710.89 | $    - | $    - | N/A | $ 1,855.45 | | | | |
| | | | | | | | | | | $ 5,360.01 | $ 5,360.01 | (NYLL $5,000) | (NYLL $5,000) | $ 20,720.02 |